**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| GLENDA EUBANKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-170-RAW-KEW |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Glenda Eubanks (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 44 years old at the time of the ALJ's decision. Claimant completed her education through the tenth grade. Claimant has worked in the past as an assembly line worker at a chicken processing plant and an assistant manager at a convenience store. Claimant alleges an inability to work beginning July 30, 2014 due to limitations resulting from chronic pain syndrome, fibromyalgia, rheumatoid arthritis, sacroilitis, leg neuropathy, injury to the

3

left arm and hand, neck pain, shoulder and knee problems, migraine headaches, carpal tunnel syndrome, insomnia, bipolar disorder, and anxiety.

## Procedural History

On November 4, 2014, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 1, 2015, Administrative Law Judge ("ALJ") Thomas J. Wheeler conducted an administrative hearing in McAlester, Oklahoma. On December 1, 2015, the ALJ issued an unfavorable decision. On March 2, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform less than a full range of sedentary work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in failing to provide

a sufficient basis for discounting the opinions of four treating physicians in favor of a non-examining state agency consultant.

## Consideration of Opinion Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of a history of work-related injuries to the cervical spine, bilateral arms and elbows, bilateral hands and wrists, and right shoulder. He also found severe impairments of right shoulder tendonitis; history of carpal tunnel syndrome, status post bilateral carpal tunnel release; rheumatoid arthritis; sacroiliitis; mild lumbar degenerative disc disease at L4-5 and L5-S1; right knee chondromalacia patella, staust post right knee arthroscopic lateral release; mild left knee chondromalacia patella; iliopsoas tendonitis of the right hip; obesity; and affective and anxiety disorders. (Tr. 17). The ALJ concluded that Claimant retained the RFC to perform less than a full range of sedentary work. In so doing, the ALJ determined Claimant could lift and/or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk about two hours total during and eight hour workday; and sit for about six hours total during an eight hour workday. Claimant could frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, or crawl. The ALJ found Claimant

5

must avoid exposure to dangerous machinery and heights. She could understand and perform simple and some complex tasks under routine supervision. Claimant could interact appropriately with others at a superficial level and could adapt to a work situation. (Tr. 23).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of document preparer, touch-up screener, and clerical mailer, all of which were found to exist in sufficient numbers both regionally and nationally. (Tr. 43). As a result, the ALJ found Claimant was not under a disability from July 30, 2014 through the date of the decision. Id.

Claimant contends the ALJ failed to properly evaluate the opinions of her treating physicians and preferred the opinion of a consultative reviewer without justification. The ALJ evaluated the four treating physicians' opinions collectively and then afforded them "little weight" because they did not provided "evidentiary support for the degree of limitations they assessed." (Tr. 38).

Dr. Mark Rogow, one of Claimant's primary care physicians, completed a medical source statement on July 3, 2015. He concluded Claimant could occasionally lift/carry ten pounds and frequently lift/carry less than ten pounds, could stand/walk for lest than two hours in an eight hour workday, could sit for less than four hours in an eight hour workday, must periodically alternate sitting and standing to relieve pain and discomfort, and was limited in pushing

6

and pulling for both the upper and lower extremities. In the narrative comment section of the form, Dr. Rogow stated "rheumatoid arthritis." (Tr. 1017). Dr. Rogow also stated Claimant could occasionally climb ramps and stairs but never balance, stoop, kneel, crouch, or crawl. On manipulative limitations, Dr. Rogow found Claimant could less than occasionally bilaterally reach and finger and occasionally bilaterally handle and feel. He determined Claimant should avoid moderate exposure to extreme cold, extreme heat, wetness, humidity, noise and fumes, odors, dusts, gases, poor ventilation and avoid all exposure to hazards, such as machinery, dangerous equipment, and heights. The basis for this restriction was stated by Dr. Rogow as "patient may lose strength or joint stability due to rheumatoid arthritis." (Tr. 1018).

Dr. Tonya Phillips, Claimant's treating neurologist, provided a medical source statement on November 7, 2014. Dr. Phillips found Claimant could occasionally and frequently lift/carry less than ten pounds, stand/walk less than two hours in an eight hour workday, sit for less than two hours in an eight hour workday, must periodically alternate sitting and standing to relieve pain or discomfort, was limited in her upper and lower extremities to push and/or pull, and could never climb, balance, stoop, kneel, crouch, or crawl. (Tr. 1014-15). Claimant could occasionally reach, handle, finger, and feel. Dr. Phillips found Claimant should avoid concentrated

7

exposure to extreme cold and heat, wetness, humidity, and vibration and should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 1015).

Dr. Nancy Weddle, another one of Claimant's treating primary care physicians, completed a medical source statement on November 10, 2014. She concluded Claimant could occasionally lift/carry ten pounds and frequently lift/carry less than ten pounds, stand/walk for less than two hours in an eight hour workday, sit for less than two hours in an eight hour workday, must periodically alternate sitting and standing to relieve pain or discomfort, and could engage in limited pushing/pulling with her lower extremities. (Tr. 757). Dr. Weddle also found Claimant could never climb, stoop, or crouch and could only occasionally balance and kneel. She could occasionally reach, handle, finger, and feel. Dr. Weddle also determined Claimant should avoid all exposure to extreme heat, vibration, and fumes, odors, dusts, gases, and poor ventilation. (Tr. 758).

Dr. Isabel Vega, Claimant's treating rheumatologist, also completed a medical source statement dated June 5, 2014. Dr. Vega opined Claimant could occasionally lift/carry ten pounds and frequently lift/carry less than ten pounds. She could stand/walk less than two hours in an eight hour workday and sit for less than two hours in an eight hour workday. She must periodically alternate

sitting and standing to relieve pain or discomfort and was limited in pushing and pulling with her lower extremities. (Tr. 1009). Dr. Vega found Claimant should never climb, stoop, crouch or crawl and only occasionally balance or kneel. She could occasionally reach, handle, finger, and feel. Dr. Vega found Claimant should avoid all exposure to extreme heat, vibration, and fumes, odors, dusts, gases, and poor ventilation. (Tr. 1010).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the

9

treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1300-01 (quotation omitted).  After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion.  20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted).  Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight."  Id.  "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."  Watkins, 350 F.3d at 1301 (quotations omitted).  This Court will consider each of the treating physicians' reports and the basis for the weight given them in turn.

     The ALJ specifically found Dr. Rogow's opinion and finding of

rheumatoid arthritis with reduced strength or joint stability was

> manifestly inconsistent with his own treating notes, which show that the claimant reported her pain symptoms are fairly well controlled, and the sole abnormal finding Dr. Rogow found was tenderness of multiple joints. Moreover, there is no indication of lost strength or joint stability.

(Tr. 38).

The reduced weight afforded Dr. Rogow's opinion by the ALJ is largely based upon no documentation in his treatment notes of reduced strength or joint instability. Dr. Rogow consistently diagnosed Claimant with rheumatoid arthritis. (Tr. 1021, 1023). The comment in the source statement concerning the affect of the condition upon strength and joint stability is prospective, indicating she "may lose strength of joint stability due to rheumatoid arthritis." (Tr. 1018). This finding is presumably based upon the natural progression of the condition not on any current examination results. The treatment notes do indicate that while certain of Claimant's conditions were "fairly well controlled current regimen", she exhibited tenderness in all major and minor joints and had "multiple areas of tenderness, hands and legs." (Tr. 1023). It is not clear which conditions were "fairly well controlled" from the face of the medical records. The ALJ assumed Dr. Rogow was referring to pain symptoms but the further reference to tenderness of various areas is inconsistent with this assumption.

It is, therefore, inaccurate to conclude that Dr. Rogow's treatment records do not support his functional limitations set forth in the source statement. On remand, the ALJ shall reassess the reduced weight he afforded this treating physician's opinion.

With regard to Dr. Weddle's medical source statement, the ALJ found that the statement was completed on the last date she attended Claimant and the medical records from that date contained no abnormal findings. The ALJ's reliance upon a single record in rejecting Dr. Weddle's functional assessment violates the reviewing requirement that the ALJ consider a longitudinal assessment of Claimant's impairments rather than merely focusing upon a single more positive result. *See* Pogue v. Berryhill, 2017 WL 1040732, *4 (E.D. Okla.)(unpublished); 20 C.F.R. § 404.1520a(c)(1)("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). References are made in Dr. Weddle's records to indicate Claimant suffered pain even while on medication, limped, and experienced decreased range of motion. (Tr. 784, 791, 803, 846, 852, 858, 861, 867). On remand, the ALJ shall consider the entire treatment record and reassess the weight to be given to Dr. Weddle's opinion.

The ALJ uniformly reduced the weight given to Dr. Vega's opinion despite the physician's finding that Claimant's condition

was worsening, concluding Dr. Vega found Claimant's condition stable. (Tr. 38). Dr. Vega documented muscle spasms and tenderness in the back with limited range of motion. (Tr. 657-58, 663, 667, 670, 675, 681, 685). Although Dr. Vega found Claimant's conditions stable, she still found Claimant's neck tender and painful with motion and tenderness and limited range of motion in the right hip. She also continued to find Claimant experienced muscle spasms and tender points on palpation. (Tr. 1032). The basis for giving reduced weight to this treating physician is suspect and requires reassessment on remand.

Dr. Phillips' opinion was rejected because the ALJ found it was "inconsistent with her assessment that the claimant's mild neuropathy of the lower extremities with symmetric and preserved reflexes, was doing well and was stable." (Tr. 38). Dr. Phillips concluded in her treatment notes that Claimant reported medication was not helping her conditions and her insurance was not covering additional medications. Claimant reported hurting all over. Dr. Phillips concluded that "I am not sure that there is really very much different that we can do." (Tr. 744). These treatment records would not indicate the level of stability suggested by the ALJ. Even if Claimant's conditions were considered "stable", the level of her functional limitations may not be at the level reflected in the ALJ's RFC and certainly does not provide a basis to essentially

13

reject the treating physician's opinion.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE